SIGNED THIS: March 10, 2017

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 16-71699 |
| TRISTAN A. DUROV, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is the Chapter 13 Trustee's Motion to Dismiss. Confirmation of the Debtor's Chapter 13 Plan is also at issue. Because the Debtor does not have sufficiently stable and regular income to enable him to make payments under a Chapter 13 plan, he is not eligible to be a debtor under Chapter 13 and his case must be dismissed or converted. The Court does not reach the issue of plan confirmation.

-1-

### I. Factual and Procedural Background

Tristan Durov ("Debtor") filed his voluntary petition under Chapter 13 of the Bankruptcy Code ("Petition") on October 20, 2016. The Debtor is currently incarcerated with the Illinois Department of Corrections ("IDOC") at Taylorville Correctional Center ("Taylorville CC"). According to his Schedule I, the Debtor receives approximately $14.28 per month as wages from the IDOC, as well as $50 per month in "family support payments that [he] . . . regularly receive[s,]" for a total of $64.28 a month. But his Schedule I also indicates that the $50 in monthly family support fluctuates, as it is provided sporadically by family and friends with no contractual commitment. On his Schedule J, the Debtor states that he has $112.88 in monthly expenses, comprised of food and housekeeping supplies ($62.88), clothing, laundry, and dry cleaning ($20), and personal care products and services ($30), resulting in monthly deficit of $48.60. Schedule J also indicates that the Debtor does not anticipate his expenses will change. In his Statement of Financial Affairs, the Debtor represented that in the calendar year before he filed his Petition, his gross income was $142.30 and that he received no other income in that time period. He also disclosed a pending wrongful death lawsuit brought by the estate of Anthony Hernandez ("Hernandez litigation"), as well as a criminal case that led to his conviction for aggravated DUI and his incarceration with the IDOC. The only creditors listed by the Debtor on his original schedules were the parties to the pending Hernandez litigation.

The Debtor filed his Chapter 13 Plan ("Plan") on November 17, 2016. The Plan proposes monthly payments of $25 for a term of 60 months, or $1500 total. After taking into account an estimated Chapter 13 Trustee fee, the Plan provides

for $1350 to be paid to unsecured creditors. The Plan also estimates the Debtor's attorney's fee to be $5000, which has already been paid.

The Chapter 13 Trustee ("Trustee") filed a Motion to Dismiss this case, arguing that the Debtor is not eligible for Chapter 13 relief because he does not have regular income. The Trustee further argued that the Debtor did not file his Petition in good faith, citing the fact that the only creditors listed in the Debtor's schedules relate to the Hernandez litigation. The Trustee says that the Debtor's bankruptcy case was filed on the eve of a prove-up hearing on a motion for default against the Debtor in the Hernandez litigation. The Trustee also questioned whether the Debtor scheduled all of his liabilities, including possible claims arising from any restitution orders or civil liability related to his DUI conviction and the cost of his incarceration.

In the Debtor's Response to the Trustee's Motion to Dismiss Case ("Response"), he asserted that there is no per se rule prohibiting incarcerated persons from seeking bankruptcy relief and that he is an individual with regular income. The Debtor argued that the Chapter 13 eligibility requirements were intended to be interpreted broadly and that the source and amount of income has no bearing on whether an individual has regular income. In support of his position that he has regular income, the Debtor points to the monthly wages he receives from the IDOC and a contract between himself and his parents, wherein his parents agreed to pay $50 per month to fund his Plan. The contract, which was attached as an exhibit to the Response, was executed after the Debtor filed his Petition and after the Trustee filed his Motion to Dismiss. It recites no consideration other than the parents' desire to provide the Debtor with regular

income of $50 a month for the duration of the Plan, and specifically states that such amounts are not a loan. As to the Trustee's bad faith argument, the Debtor asked the Court to consider his limited employment prospects after he serves his prison term. The Debtor also argued that he has been forthcoming in the disclosure of his assets, liabilities, and creditors, asserting that the statute of limitations has passed on any potential civil lawsuit related to his DUI conviction. And as to the pending Hernandez litigation, the Debtor claimed that the timing of his bankruptcy filing only benefits his creditors, as it saves them the cost of litigation and provides them a dividend that would otherwise not exist in a Chapter 7 case. To that end, the Debtor says that any debts arising out of the Hernandez litigation would be dischargeable in Chapter 7.

At a December 13, 2016 hearing on the Motion to Dismiss, the Trustee argued that the post-petition contract with the Debtor's parents, if enforceable at all, was not relevant to the issue of eligibility, which he asserted is determined as of the date of the bankruptcy filing. The Trustee further argued that the Debtor's prison wages are not sufficiently regular and stable to allow him to make a meaningful plan payment, which he said requires something more than a de minimis amount. The Debtor, in turn, argued that eligibility is determined on a going-forward basis. Because the Debtor's first meeting of creditors had not yet been held, the Trustee's Motion to Dismiss was continued for further hearing.

At a January 24, 2017 status hearing, the Debtor's attorney informed the Court that the meeting of the creditors had been held and the Debtor had appeared at the meeting telephonically. The Trustee's Motion to Dismiss was set for evidentiary hearing with arrangements to be made for the Debtor to appear by

video conference. Confirmation of the Debtor's Plan was later set for hearing at the same time. The Debtor also amended his schedules to add the creditors who might have claims relating to his DUI conviction.

At the evidentiary hearing, the Court heard testimony from the Debtor and his step-mother, Mary Durov. The Debtor testified that he is currently incarcerated with the IDOC at Taylorville CC for an aggravated DUI conviction as the result of the death of two individuals on July 20, 2014. He expects his incarceration to continue until at least March 2022. The Debtor testified that he is assigned a job in Taylorville CC and receives approximately $14 per month in wages from the IDOC. He also stated that "the State pay" was his only income source prior to filing his Petition. The Debtor further testified that he was named as a defendant in the Hernandez litigation in April 2015 for allegedly selling Anthony Hernandez drugs, but he also denied selling or otherwise providing any drugs to Mr. Hernandez. He acknowledged, however, testifying at a deposition during which he pled protection under the Fifth Amendment in response to similar questions. The Debtor also testified that he has his GED and is currently engaged in other rehabilitative course work at the prison. He also said that prior to his incarceration, he worked as a construction laborer.

As to the events surrounding his conviction, the Debtor testified that, on the evening of July 20, 2014, he left a party intoxicated on alcohol and drugs, driving himself and his friends in a vehicle that he ultimately rolled into a ditch. Two of the passengers died in the crash and the Debtor was hospitalized. The Debtor stated that he was never sued by the families or representatives of either decedent or their estates. Likewise, the Debtor stated that he had not entered into any

settlement or other agreement with anyone in relation to liability concerning the events that occurred July 20, 2014. The Debtor also testified that there was no restitution order included with his DUI conviction.

The Debtor was asked about his bankruptcy schedules and other documents, testifying that he participated in compiling the financial information set forth in his schedules, which he said were accurate and had not changed since the petition date. Although the Debtor admitted he did not understand the difference between a Chapter 7 and Chapter 13 bankruptcy, he explained that he filed his Chapter 13 case because he wanted a fresh start and wanted to stop being a financial burden on his family. In particular, the Debtor testified that his parents were paying the attorney fees associated with the Hernandez litigation, even though, in his view, they could not afford to do so. And as to the contract, the Debtor testified that the purpose of the document was to arrange for his parents to make the payments due under his Plan.

The Debtor's stepmother, Mary Durov, testified that she works as a teacher's assistant in a local public school and shares a home with her husband and the Debtor's father, Steven Durov, who is a sheet metal worker. Mrs. Durov testified that she has a gross annual income of about $17,000, and believed her husband's net monthly income was approximately $2500. She testified that she has known the Debtor and been in his life for more than ten years and that he had lived with her and her husband until his incarceration. According to Mrs. Durov, she and her husband wanted to help the Debtor and have gone to great lengths to do so, including drawing upon their retirement accounts to pay for his attorney in the Hernandez litigation. But she also said that they can no longer

afford to pay the attorney fees to defend him.

Mrs. Durov testified that she and her husband agreed to contribute $50 a month to the Debtor's bankruptcy because they want to help him make his Plan payments. She stated that the reason she and her husband have funded the Debtor's defense in the Hernandez litigation and also want to fund his Plan is that they believe he is innocent and want to avoid having an "enormous judgment" follow the Debtor so that he can "come out of prison with a clean slate." Mrs. Durov testified that she visits and speaks with the Debtor over the phone regularly and writes him letters. When the Debtor is released from prison, Mrs. Durov and her husband intend to provide for him until he is able to get back on his feet. Mrs. Durov testified that she and her husband had paid for his bankruptcy thus far, including the fees charged by his bankruptcy attorneys. On cross-examination, Mrs. Durov admitted that her understanding of why a Chapter 13 case was filed in lieu of a Chapter 7 case was that, because the creditors were trying to get a lot of money from the Debtor and she and her husband could not afford to keep defending him, Chapter 13 seemed like a way for them to avoid continuing with the Hernandez litigation and to just pay the creditors the little bit that they are able to pay. She also stated, however, that she does not believe the Debtor's creditors are entitled to any money from the Debtor.

At the close of evidence, the parties offered arguments. The matter was taken under advisement after the hearing and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C.

§1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of an estate and plan confirmation are core proceedings. 28 U.S.C. §157(b)(2)(A), (L). The matters here arise directly from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

*A. Burden of Proof*

The Trustee filed his Motion to Dismiss for cause, arguing that the Debtor is not eligible for Chapter 13 because he does not have regular income and that the Debtor's Petition was filed in bad faith. 11 U.S.C. §1307(c). Generally, the party moving for dismissal under §1307(c) bears the burden of showing that dismissal is warranted. *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992). And it would appear that the burden is the same whether dismissal for cause is sought on one or more specifically enumerated grounds under §1307(c) or for some other basis that is not explicitly described in §1307(c)'s non-exclusive list of "cause." *See, e.g., id.* at 1354-55. There is, however, some ambiguity as to whether there are exceptions to the general principle.

Chapter 13 is only available to individuals who are eligible to be a debtor under that chapter. 11 U.S.C. §109(e). And while the Code and Rules do not prescribe a particular procedure for challenging a debtor's eligibility, the issue is typically raised by a motion to dismiss. It is logical, then, to conclude that the

party challenging a debtor's eligibility has at least the initial burden of proof. *See, e.g.*, *In re Herrera*, 194 B.R. 178, 188 (Bankr. N.D. Ill. 1996) (the party moving for dismissal under §109(g)(1) has the burden of proof); *In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007) (addressing eligibility based on compliance with §109 debt limit). But in the context of §109(e)'s regular income requirement, several courts have held that the burden falls on debtors to establish their right to relief under Chapter 13. *See, e.g.*, *In re Pantazelos*, 540 B.R. 347, 351 (Bankr. N.D. Ill. 2015) (citing *Singer Asset Fin. Co. v. Mullins (In re Mullins)*, 360 B.R. 493, 498 (Bankr. W.D. Va. 2007)).

Proponents of assigning the burden of proving eligibility to the debtor argue that the approach is consistent with another general principle—that the party with the better means to prove or disprove an issue should bear the burden of proof. *See, e.g.*, *In re Corson*, 2004 WL 5865045, at *8-9 (Bankr. E.D. Pa. June 25, 2004). One leading Chapter 13 commentator, arguing that this is the better rule, has noted that assigning the burden to an "objecting creditor creates difficult problems of discovery and proof because essentially all of the evidence bearing on eligibility, except for the statements and schedules, is in the debtor's possession." Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4 TH EDITION, §5.4, at ¶1-2, Sec. Rev. Mar. 4, 2009, www.Ch13online.com. This Court, however, need not resolve the issue in this case because, to the extent that the Trustee bore the burden of showing that the Debtor is not eligible for Chapter 13, he met his burden by referring the Court to the Debtor's bankruptcy schedules. *See Corson*, 2004 WL 5865045, at *9. Thereafter, the burden of persuasion shifted to the Debtor to show otherwise. *Id.*

As to the Trustee's bad faith argument, the parties disagree as to who bears the burden of proof. The Trustee argues that, while he, as the moving party, generally has the burden of proving that cause for dismissal exists, the addition of §1325(a)(7) to the Code placed the burden on the Debtor because he would have to prove good faith at confirmation anyway. 11 U.S.C. §1325(a)(7). Conversely, the Debtor argues that he bears the burden of proof only for purposes of confirmation and that the Trustee still has the burden of showing that dismissal is warranted.

Prior to the enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), the Seventh Circuit made clear in its *Love* decision that, even if a debtor has the burden of proving good faith under §1325, it is the party moving for dismissal under §1307(c) that bears the burden of demonstrating cause. *Love,* 957 F.2d at 1355. At issue in *Love* was a creditor's motion to dismiss on the basis that the debtor's petition was filed in bad faith. In applying the same good faith standards as are applicable under §1325(a)(3), the court was careful to draw a distinction between good faith in filing a petition and good faith in filing a plan, the latter of which the debtor would have been required to show at confirmation. *Id.* at 1354-55. Noting that the lack of good faith in filing a petition may lead to dismissal or conversion, whereas the lack of good faith in proposing a plan typically leads to the less-severe consequence of requiring an amended plan, the court explained that "[s]ection 1325 outlines the terms for confirmation of a bankruptcy plan, not the terms for a dismissal of the Chapter 13 proceedings." *Id.* at 1354.

BAPCPA, however, introduced §1325(a)(7), which requires a debtor to show that the petition was filed in good faith as a condition of confirmation. 11 U.S.C.

-10-

§1325(a)(7). The addition of §1325(a)(7) has been viewed as "nothing more than a codification of the long-standing judge-made rule and a corollary of §1307(c)—that a petition can be dismissed 'for cause.'" *In re Shafer*, 393 B.R. 655, 659 (Bankr. W.D. Wis. 2008). And courts analyzing the issue of good faith in filing a petition since the addition of §1325(a)(7) have applied the same standards. *In re McCreary*, 2009 WL 5215587, at *2 (Bankr. C.D. Ill. Dec. 29, 2009) (Perkins, J.). But absent from those decisions is any discussion regarding the impact of §1325(a)(7) on *Love*'s holding that the party moving for dismissal under §1307(c) has the burden of proof.

For purposes of the instant case, it suffices to say that the Trustee, as the moving party, has the burden of demonstrating that cause for dismissal exists. Whether, and to what extent, the addition of §1325(a)(7) shifted the burden of proving good faith in the filing of the Petition to the Debtor need not be determined here because, for the reasons set forth below, this case will be decided on the issue of eligibility.

### B. Debtor Eligibility

The Trustee seeks dismissal of the Debtor's case on the basis that he is not eligible for Chapter 13 relief. Section 109(e) of the Code provides that "only an individual with regular income . . . may be a debtor under chapter 13 of this title." 11 U.S.C. §109(e). But §109(e) does not state the date at which the regular income requirement is to be determined. The Trustee argues that the date of the filing of the Debtor's Petition controls, and that the Court need only review the Debtor's schedules. A number of courts have sided with the Trustee on this issue. *See, e.g.*,

*In re Robinson*, 535 B.R. 437, 443 (Bankr. N.D. Ga. 2015). Unsurprisingly, the Debtor contends that eligibility should be determined on a going-forward basis. The Debtor's position is not without support, as other courts have concluded that, while the date of filing the petition is relevant, a debtor's circumstances may properly be viewed prospectively. *See, e.g., In re Loomis*, 487 B.R. 296, 300 (Bankr. N.D. Okla. 2013).

It is clear, however, that at least as of the date of the hearing on the Motion to Dismiss, the Debtor was required to be an "individual whose income is sufficiently stable and regular to enable [him] to make payments under a plan under chapter 13 of this title[.]" 11 U.S.C. §101(30). The term "income" is itself not defined, but courts addressing the issue agree that "the test for 'regular income' is not the type or source of income," instead focusing on the regularity and stability of the income. *In re Murphy*, 226 B.R. 601, 604 (Bankr. M.D. Tenn. 1998) (collecting cases). Indeed, "nontraditional sources of money can generate income for §101(30) purposes." *Id.* at 605. This includes social security or other governmental benefits, child support, and pension or investment income. *See In re Robinson*, 535 B.R. 437, 443-44 (Bankr. N.D. Ga. 2015) (collecting cases); *Murphy*, 226 B.R. at 605 (collecting cases). But several courts have also held that contributions from a nonfiling spouse, another family member, or even an unmarried, long-term companion can be regular income for purposes of §101(30). *See id.*

The facts and circumstances of a particular case dictate whether contributions from a family member or significant other are regular income. *See Murphy*, 226 B.R. at 604; *In re Campbell*, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984).

At one end of the spectrum, payments made in connection with an on-going legal right or obligation satisfy the regular income requirement. *See In re Antoine*, 208 B.R. 17, 20 (Bankr. E.D.N.Y. 1997) (nonfiling spouse had marital duty to support and was obligated on mortgage). But that is not to say that regular income is dependent on a preexisting legal right or duty. *See Murphy*, 226 B.R. at 602-07 (contributions from an unmarried debtor's companion of 11 years, with whom she shared a household along with his two children, qualified as regular income). In *Murphy*, the court criticized decisions that narrowly focused on whether there was a legal right or obligation to provide ongoing contributions. *Id.* at 606. Noting that there was no legal right to continued employment for an at-will employee and that the receipt of government benefits depended on the will of the legislature, the court found that a testimonial commitment from a long-time companion to fund a debtor's plan could be sufficient to meet any perceived requirement of legal right or duty as a predicate to meeting the regular income standard. *Id.* at 607.

On the opposite end of the spectrum, purely gratuitous contributions generally do not qualify as regular income. *See In re Cregut*, 69 B.R. 21, 22-23 (Bankr. D. Ariz. 1986) (contributions from the debtor's father for college expenses were gratuitous and therefore not regular income). Nonetheless, a number of courts have been critical of the general rule or have simply found that it did not apply to the case before it. *See, e.g., In re Cohen*, 13 B.R. 350, 356 (Bankr. E.D.N.Y. 1981) (finding no distinction between the generosity of the government and that of a close relative before nonetheless concluding that the debtor was not eligible); *In re Campbell*, 38 B.R. 193, 196 (Bankr. E.D.N.Y. 1984) (concluding that contributions from the debtor's siblings and daughter, each of whom had a

-13-

substantial interest in the debtor's successful execution of a plan, were sufficiently stable and regular, despite the general rule that gifts from family do not qualify as regular income).

The Trustee cites several cases where incarcerated debtors were ineligible for Chapter 13 relief. *See, e.g., In re Ristic*, 142 B.R. 856, 862 (Bankr. E.D. Wis. 1992) (incarcerated debtor has no control over work he is assigned in prison or whether work will continue, and thus no control over his stream of income). But the sole fact that the Debtor is incarcerated does not disqualify him from seeking relief under Chapter 13. *See In re Crowder*, 179 B.R. 571, 574 (Bankr. E.D. Ark. 1995) (considering income stream from incarcerated debtor's house before concluding the funds were unavailable because they were devoted to payment of the mortgage). And cases falling between plainly gratuitous contributions and clear legal obligations establish that the determination of regular income depends on the interplay between the level of commitment and the degree of self-interest of the income source. *See In re Andolino*, 525 B.R. 588, 590-91 (Bankr. D.N.J. 2015) (income of debtor's girlfriend of one year could satisfy regular income requirement if debtor is able to demonstrate, through testimonial evidence, his girlfriend's commitment to funding his plan); *In re Loomis*, 487 B.R. 296, 300-02 (Bankr. N.D. Okla. 2013) (distinguishing cases evidencing a long-term relationship and some additional showing of commitment before finding contributions from the debtor's fiancé of 18 months were not regular income); *Gulley v. DePaola*, 301 B.R. 361 (M.D. Ala. 2003) (contributions from son living in adjoining house are not regular income without evidence of more); *In re Tennis*, 232 B.R. 403, 406 (Bankr. W.D. Mo. 1999) (finding contributions from the debtor's two teen-age daughters

not sufficiently regular and stable); *In re Fischel*, 103 B.R. 44, 48-49 (Bankr. N.D.N.Y. 1989) (contributions from unmarried, live-in companion were regular but not sufficiently stable absent some affirmative action).

Here, the Debtor contends that his parents' willingness to fund his Plan satisfies the regular income requirements of §109(e). The Debtor offered the testimony of his step-mother, Mary Durov, and the contract signed by the Debtor and his parents, wherein the Debtor's parents agree to make his Plan payments. But the obligations of the Debtor's parents pursuant to the contract are purely gratuitous; the document recites no consideration whatsoever for the payments which are to be made. The Court does not doubt that the Debtor's parents are well-intentioned; Mary Durov was a credible witness. But the agreement simply memorializes the intent of the parents to make a series of gifts and provides the Debtor with no legally enforceable right to the payments from his parents.[1] Further, the circumstances before the Court are not such that warrant departure from the general rule that gifts from family do not qualify as regular income. The Debtor's parents do not have a cognizable interest in the Debtor's bankruptcy. They are not liable on any of their son's debts and do not derive a benefit from any property of his bankruptcy estate. *See Campbell*, 38 B.R. at 196; *Cregut*, 69 B.R. at 22-23. Although the Debtor lived with his parents prior to his incarceration and intends to do so again upon his release, there is no evidence that the Debtor and his parents pooled their income and expenses or had some other living

---

[1] The Debtor's Plan payment is $25 per month and the contract says that the Debtor's parents will pay him $50 per month. Presumably, the extra $25 is intended to assist the Debtor with his modest expenses inside Taylorville CC.

arrangement that they wanted to preserve in the bankruptcy. *See Loomis*, 487 B.R. at 300-01; *Fischel*, 103 B.R. at 49. Clearly, the purpose of entering into a contract was to try to create Chapter 13 eligibility for the Debtor. Regardless of the sincerity of the parents, their wholly gratuitous payments do not constitute "regular income" for the Debtor, and their post-petition agreement to make gifts to the Debtor cannot create Chapter 13 eligibility for the Debtor.

If the Debtor cannot count his parents' gifts as regular income—and he cannot—the question remains as to whether the Debtor has any other sources of income that might satisfy the requirements of §109(e). According to the Debtor's schedules, he receives $14.28 a month from the IDOC, and he admitted at trial that "the State pay" was his only source of income prior to bankruptcy. His meager IDOC earnings are the only other income he claims to have.

To be eligible for Chapter 13, in addition to simply having income, a debtor's income must be "sufficiently stable and regular to enable [the debtor] to make payments under a plan under chapter 13[.]" 11 U.S.C. §101(30). Several courts have interpreted this requirement to mean that a debtor must have some income in excess of expenses so as to allow him to make payments on a plan. *See, e.g.*, *In re Terry*, 630 F.2d 634, 635 (8th Cir. 1980); *In re Ellis*, 388 B.R. 456, 460 (Bankr. D. Mass. 2008); *Mullins*, 360 B.R. at 499-500. Of course, as other courts that are critical of this interpretation point out, a distinction must be drawn between eligibility to be a debtor under Chapter 13 and the feasibility of the eventual confirmation of a plan under the same chapter. *See, e.g., In re Santiago-Monteverde*, 512 B.R. 432, 443 (S.D.N.Y. 2014). As such, any inquiry into a debtor's budget should not involve a detailed analysis akin to the calculation of

projected disposable income. *Id.* Rather, eligibility should be more liberally found where there is some showing that the debtor is able to make the payments. But to survive even a superficial inquiry into a debtor's ability to make payments under a plan, some evidence of income in excess of expenses, whether through court filings or at a hearing, is required. *See In re Nosker*, 267 B.R. 555, 559-61 (Bankr. S.D. Ohio 2001).

Again, the Debtor's schedules reflect monthly wages from the IDOC in the amount of $14.28. The Debtor also listed modest monthly expenses in the amount of $112.88. A comparison of scheduled income and expenses shows that the Debtor cannot afford to make payments under any plan. The amount of his IDOC income is de minimis and, even if the Debtor could devote all of it to plan payments, he would not have enough to enable him to make payments under a Chapter 13 plan as required. 11 U.S.C. §101(30). As the Trustee correctly points out, just having some source of meager income is not sufficient to create eligibility. The income must be sufficient to enable plan payments to be made. *Id.* In making this finding, the Court is not confusing eligibility with feasibility. Eligibility requires a lower threshold of proof than feasibility but nevertheless requires some showing that a debtor has sufficient regular income available to make plan payments. That showing was not made here.

The Trustee met his burden of proof on the eligibility issue by referring to the Debtor's schedules and pointing out the lack of consideration for the Debtor's contract with his parents. The Debtor did not meet his burden to show that his parents' anticipated contributions were anything but wholly gratuitous. He also

did not establish that he had other regular income to make plan payments as is required to be eligible for Chapter 13 relief. Due to lack of eligibility, this case must be dismissed or converted.

### C. Good Faith

As an alternative basis for dismissal, the Trustee contends that the Debtor did not act in good faith in filing his Petition. It is well established that cases may be dismissed or converted for "cause," and "cause" includes the lack of good faith in filing. *See* 11 U.S.C. §1307(c); *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988); *Love*, 957 F.2d at 1354. A good faith inquiry is a factual determination based on the totality of circumstances of a particular case. *See Smith*, 848 F.2d at 817-18; *Love*, 957 F.2d at 1355. Both objective and subjective inquiries are involved in determining whether a case has been filed in good faith. *Love*, 957 F.2d at 1357. Factors to be considered include the nature and potential nondischargeability of scheduled debts; the timing of the case filing; the circumstances of how particular debts were incurred; the debtor's motive for filing; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after filing; and whether the debtor has been forthcoming with the court and creditors. *See In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005); *Love*, 957 F.2d at 1357.

In a totality of circumstances analysis, all of the factors should be considered and none should be given undue weight. Chapter 13 contains different provisions than Chapter 7 for the discharge of debts, and the fact that a debtor

selects the more favorable provisions of Chapter 13 is not, in and of itself, determinative of bad faith. *See Smith*, 848 F.2d at 818; 11 U.S.C. §§523(a), 1328. Likewise, while the timing of a case filing may be relevant to the inquiry, it is not necessarily the controlling factor. Although filing immediately after the entry of an unfavorable judgment may be viewed as a sign of bad faith, waiting to file until the eve of a sale or other execution on a judgment may be viewed just as unfavorably. *See Smith*, 848 F.2d at 821. Generally, a finding of bad faith—or lack of good faith—requires a finding of serious debtor misconduct or abuse. *See id.* at 820-21.

At the December 2016 hearing, the Court expressed its initial reaction that good faith in the filing of the Debtor's Petition seemed to be lacking. It noted that the Debtor omitted creditors with potential claims, based on his unilateral determination that any claims arising from the events resulting in his DUI conviction were time-barred. It was also clear to the Court that the Debtor's Petition was filed under Chapter 13 to avoid possible inquiry in a Chapter 7 into the dischargeability of any debt arising from the Hernandez litigation—the only debt he scheduled. Of course, as the Court pointed out, its knowledge of the circumstances was limited to the pleadings and the arguments raised by the parties at that time. After hearing the evidence at trial, the Court is still not inclined to find that the Debtor filed his Petition in good faith. But, as explained *supra*, the Court need not decide the issue of good faith in terms of dismissal or plan confirmation, having determined that the Debtor does not have regular income and is not eligible for Chapter 13.

### IV. Conclusion

The Debtor earns approximately $14.00 a month through his job assignment with the IDOC, which, when compared to his modest monthly expenses, is insufficient to make any meaningful plan payment. And while the Debtor's parents have expressed their desire and willingness to fund their son's Plan, such contributions would be purely gratuitous and do not qualify as regular income of the Debtor for purposes of Chapter 13 eligibility. As such, the Debtor is not eligible for Chapter 13 and his case should therefore be dismissed.

At the evidentiary hearing, the Debtor's attorneys requested that, if the Court decided to grant the Trustee's Motion to Dismiss, the Debtor be given an opportunity to consider conversion of his case to Chapter 7 before the order of dismissal is entered. The request was reasonable. The Debtor will be given 14 days to convert to Chapter 7. If he fails to file a notice of conversion within the 14 days, a final order of dismissal will be entered thereafter, without further notice or hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###